**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

FILED

XCEL DATA SYSTEMS, INC.
    a Suspended California Corporation
    Plaintiff/Counter-Defendant

AUG 1 9 2008

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY __J. HELLINGS__
DEPUTY CLERK

v.

Case No. **1:08 CV 00613-OWW-GSA**
Honorable Oliver W. Wanger

**Counter-Claim and**
**Third-Party Complaint**

DEREK BEST,
    an individual,
    Defendant.

v.

Michael Moreno,
    AKA Mike Moreno,
    Third-Party Defendant.

_____/

James M. Duncan, Bar No. 161474
Klein, DeNatale, Goldner, Cooper
  Rosenleib & Kimball, LLP
Attorneys for Plaintiff
4550 California Avenue
Second Floor
Bakersfield, California 93309
(661) 395-1000
JDuncan@KleinLaw.com

Derek Best
Defendant in pro per
36155 Grand River
No. 103
Farmington, Michigan 48335
(313) 204-8994

## COUNTER-CLAIM AND THIRD PARTY COMPLAINT

Defendant/Counter-Plaintiff Derek Best states in support of his Counter-Claim

and Third-Party Complaint as follows:

1

1.  Defendant/Counter-Plaintiff is an individual citizen of the United States, is a resident of the State of Michigan and may be found within the Eastern District of Michigan.

2.  Plaintiff/Counter-Defendant is a suspended California Corporation having its principal office in the City of Bakersfield in the State of California subject to this court's personal jurisdiction and may be found in the Eastern District of Michigan.

3.  Third-Party Defendant Michael Moreno is an individual and resident of the City of Bakersfield and State of California laboring under the mistaken belief that no one would notice that he is a necessary party to this action.

4.  The amount in controversy exceeds $75,000.00.

5.  The court has subject matter jurisdiction pursuant to **28 USC § 1332** arising out of the diversity of citizenship of the parties and out of the amount in controversy.

6.  The court has subject matter jurisdiction  pursuant to **28 USC § 1331** and exclusive jurisdiction under **28 USC § 1338 (a) and (b)** because the action requires resolution of a federal question arising out of Defendant/Counter-

Plaintiff's claim of copyright infringement and unfair competition as
detailed in the following allegations.

7.     The court has supplemental jurisdiction pursuant to **28 USC § 1367** over
the state law claims detailed below because those claims are so related to
the claims within the court's original jurisdiction that the state law claims
form part of the same case or controversy.

8.     Prior to June of 1999, the Defendant/Counter-Plaintiff created and wrote a
computer software program named Xpawn, which was an original creation
of the Defendant/Counter-Plaintiff.

9.     On or about June of 1999, the Defendant/Counter-Plaintiff registered a
copyright for the Xpawn software program with the United States
Copyright Office. The Defendant/Counter-Plaintiff was and remains the
copyright owner of Xpawn and all derivatives of Xpawn.

10.    On or about 2000, the Third-Party Defendant sought to obtain rights to
Xpawn and entered into an agreement with the Defendant/Counter-
Plaintiff to form and incorporate the Plaintiff/Counter-Defendant to
market and support Xpawn.

11.     The Third-Party Defendant was unable to effectively manage the
        Plaintiff/Counter-Defendant resulting in a breakdown in the relationship
        between the parties.

12.     The Third-Party Defendant prepared an agreement intending for the
        Plaintiff/Counter-Defendant and the Third-Party Defendant to obtain the
        rights to Xpawn from the Defendant/Counter-Plaintiff.

13.     Exasperated with the Third-Party Defendant, the Defendant/Counter-
        Plaintiff signed an agreement that conditionally transferred the rights to
        Xpawn to the Plaintiff/Counter-Defendant and the Third Party Defendant
        provided that the Plaintiff/Counter-Defendant and the Third-Party
        Defendant pay for Xpawn and fulfill certain other requirements.

14.     The Plaintiff/Counter-Defendant attached a copy of the agreement to the
        Plaintiff's Complaint on file with the court.

15.     The Plaintiff breached the agreement by failing to pay the amounts due
        under the agreement, failing to pay royalties due under the contract,
        transferring the software source code to third parties, and failing to fulfill
        other terms of the agreement.

4

16.   By oversight and mismanagement, the Plaintiff/Counter-Defendant's
      status as a California corporation was suspended by operation of law in
      January of 2005 for failing to pay taxes due the state and/or for failing to
      file annual reports with the California Secretary of State.

17.   The suspension of the Plaintiff/Counter-Defendant's status was a breach
      of the agreement between the parties vacating any rights that the Plaintiff-
      Counter Defendant and the Third-Party Defendant may have had in the
      Xpawn software and other intellectual property that was the subject of the
      agreement.

18.   In spite of the suspension of its corporate status, the Plaintiff/Counter-
      Defendant continued to use, market, sell, and transfer the Xpawn software
      to third parties in contravention of the Defendant/Counter Plaintiff's
      statutory and common law copyrights in the software.

19.   The agreement provided that the Defendant/Counter-Plaintiff would
      retain a security interest in the Xpawn computer software and other
      intellectual property rights included within the agreement until all the
      conditions of the agreement were satisfied and that all the rights in the
      software and other intellectual property would automatically revert to the
      Defendant/Counter-Plaintiff upon breach of the agreement.

5

20.     The pertinent language from the agreement providing the

Defendant/Counter-Plaintiff with a security interest is as follows:

> *3.05    Security.* Buyer hereby grant to Seller as security, all
> ownership and interest in all software, customers, items, rights, and
> intellectual property listed in paragraph 1 .01 above. In the event of
> default or nonperfonnance of this Agreement by Buyer, in any of
> the ways stated above, all listed software, customers, items, rights,
> and intellectual property shall revert immediately and exclusively
> to the Seller, without further compensation or recourse of any kind
> to Buyer. Buyer shall thenceforth completely refrain from all
> commerce and enterprise involving the software, customers, items,
> rights and intellectual property so stated. Seller may thenceforth
> lease, sell, market, support, and otherwise use and benefit from the
> Software in any manner the Seller desires.

21.     Pursuant to the security provision, the Defendant/Counter-Plaintiff is the

owner of the Xpawn software and all other intellectual property rights that

were the subject of the agreement.

## COPYRIGHT INFRINGEMENT

22.     Defendant/Counter-Plaintiff incorporates by reference the allegations in

paragraph one through twenty-one above as though stated herein.

23.     The Defendant/Counter-Plaintiff has a registered copyright in the Xpawn

software program having a registration number TX0005236946 with an

effective registration date of June 28, 2000.

6

24.    The Plaintiff/Counter-Defendant has used, marketed, sold, and transferred
the Xpawn software without the permission of the Defendant/Counter-
Plaintiff and in violation of the copyrights in the software.

25.    The Third-Party Defendant has used, marketed, sold, and transferred the
Xpawn software without the permission of the Defendant/Counter-
Plaintiff and in violation of the copyrights in the software.

26.    The Defendant/Counter-Plaintiff notified the Plaintiff/Counter-Defendant
and the Third-Party Defendant of the copyright and demanded that the
Plaintiff/Counter-Defendant and the Third-Party Defendant cease and
desist from violating the Defendant/Counter-Plaintiff's Copyright.

27.    Although the Plaintiff/Counter-Defendant and the Third-Party Defendant
have acknowledged receipt of the Defendant/Counter-Plaintiff's demand
letter, they continue to use, market, sell, and transfer the Xpawn software
causing the Defendant/Counter-Plaintiff irreparable harm and the
Defendant/Counter-Plaintiff has no adequate remedy at law for the
continuing infringement. The Defendant/Counter-Plaintiff is entitled to an
injunction restraining the Third-Party Defendant and the Plaintiff/Counter-
Defendant its directors, officers, agents, employees, representatives, and
all person acting in concert with them from engaging in further acts of
copyright infringement.

7

28. The Defendant/Counter-Plaintiff has also incurred damages that are continuing to accrue to his ownership rights in the copyrighted work arising from the gains, profits, and advantages that the Plaintiff/Counter-Defendant and Third-Party Defendant have obtained as a result of their acts of copyright infringement.

29. Defendant/Counter-Plaintiff has also incurred substantial costs that are continuing to accrue as a result of the Plaintiff/Counter-Defendant's and Third-Party Defendant's acts of copyright infringement.

30. Defendant/Counter-Plaintiff has also incurred substantial attorney fees that are continuing to accrue as a result of the Plaintiff/Counter-Defendant's and Third-Party Defendant's acts of copyright infringement.

## BREACH OF CONTRACT

31. Defendant/Counter-Plaintiff incorporates by reference the allegations in paragraph one through thirty above as though stated herein.

32. On March 2, 2002, the Defendant/Counter-Plaintiff, the Plaintiff/Counter-Defendant, and the Third-Party Defendant entered into an agreement conditionally transferring the copyright to the Xpawn software and other

intellectual property rights to the Plaintiff/Counter-Defendant and the
Third-Party Defendant.

33.   The Plaintiff/Counter-Defendant and the Third-Party Defendant breached
the contract by failing to perform their essential duties under the contract.

34.   The contract provided that the Defendant/Counter-Plaintiff had a security
interest in the copyright to the Xpawn software and the intellectual
property assets that were the subject of the contract. Upon the
Plaintiff/Counter-Defendant and the Third-Party Defendant's breach of the
contract, the ownership of the copyright to the Xpawn software and the
intellectual property assets automatically reverted to the
Defendant/Counter-Plaintiff.

35.   The Plaintiff/Counter-Defendant and the Third-Party Defendant have
repudiated the contract.

36.   Although, the Plaintiff/Counter-Defendant and the Third-Party Defendant
breached and repudiated the contract, they continue to use, market, sell,
and transfer the Xpawn software to third parties causing the
Defendant/Counter-Plaintiff irreparable harm.

37.   The contract provides that the Defendant/Counter-Plaintiff is entitled to his attorney fees in any action to enforce the Defendant/Counter-Plaintiff's rights under the contract.

38.   The Defendant/Counter-Plaintiff has suffered substantial damages as a result of the Plaintiff/Counter-Defendant and the Third-Party Defendant breaches of the contract.

## REFORMATION

39.   Defendant/Counter-Plaintiff incorporates by reference the allegations in paragraph one through thirty-eight above as though stated herein.

40.   The agreement between the parties contains a covenant not to compete, which states:

3.01.   *Agreement Not To Compete.*

(a)   Seller to Buyer: Except as otherwise consented to or approved in writing by the Buyer, the Seller agrees that, for a period of **seven years** from the date hereof, Seller shall not, directly or indirectly, acting alone or as a member of a partnership or as an officer, director, employee, consultant, lender, representative, holder of, or investor in as much as 3% of any security of any class of any corporation or other business entity ("Seller Parties") (i) engage in the practice of developing, advertising, marketing, selling, or supporting any product which could reasonably be considered a substitute, rival, or direct competitor for "XPawn" **anywhere outside of the United**

**Kingdom,** or via the internet or other electronic media aimed or
targeted to consumers outside the United Kingdom; (ii) request any
customers or suppliers of the Buyer or any affiliate of the Buyer to
curtail or cancel their business with the Buyer or any affiliate of
the Buyer; (iii) disclose to any person, firm or corporation any
trade, technical or technological secrets of the Buyer or any
affiliate of the Buyer or any details of their organization or
business affairs except as required by law or legal process; or (iv)
induce or actively attempt to influence any employee of the Buyer
or any affiliate of the Buyer to terminate his employment or hire
any former employee of the Buyer or any affiliate of Buyer within
six months of his termination date with Buyer or any affiliate of
the Buyer. Seller agrees that if either the length of time or
geographical area set forth in this Agreement is deemed too
restrictive in any court proceeding, a court may reduce such
restrictions to those that it deems reasonable under the
circumstances.

41.    The covenant is unconscionable and unenforceable both as to its term and

the scope of its geographic restrictions.

42.    The covenant contravenes the public policy of the State of California to

encourage competition and should be stricken from the contract.

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

43.    Defendant/Counter-Plaintiff incorporates by reference the allegations in

paragraph one through forty-two above as though stated herein.

44.    On March 2, 2002, the Defendant/Counter-Plaintiff, the Plaintiff/Counter-

Defendant, and the Third-Party Defendant entered into an agreement

conditionally transferring the copyright to the Xpawn software and other

11

intellectual property rights to the Plaintiff/Counter-Defendant and the Third-Party Defendant.

45.    The Defendant/Counter-Plaintiff had a reasonable expectation of receiving the amounts due under the contract including the periodic payments and the royalties resulting from the Plaintiff/Counter-Defendant's sale of the Xpawn software.

46.    The Third-Party Defendant has interfered with the contractual relationship between the Defendant/Counter-Plaintiff and the Plaintiff/Counter-Defendant by preventing payments of the amounts due under the contract and by failing to maintain the corporate status of the Plaintiff-Counter-Defendant.

47.    The Defendant/Counter-Plaintiff has incurred damages, attorney fees, and substantial costs that are continuing to accrue arising out of the Third-Party Defendant's interference with the contract between the Plaintiff/Counter-Defendant and the Defendant/Counter-Plaintiff.

The Defendant/Counter-Plaintiff requests the court to instruct a jury to award the Defendant/Counter-Plaintiff damages in an amount that will appropriately compensate the Defendant/Counter-Plaintiff for:

        a.    The infringement of the Defendant/Counter-Plaintiff's Copyright.

12

b.   The sales and profits that the Plaintiff/Counter-Defendant obtained from the distribution and support income of the Xpawn software.

c.   Losses resulting from the Plaintiff/Counter-Defendant's distribution of the source code for Xpawn software to third parties.

d.   The Defendant/Counter-Plaintiff's attorney fees and costs arising out of this action.

e.   A reasonable royalty for all sales of the Xpawn software and derivative software.


The Defendant/Counter-Plaintiff also requests the court to:

a.   Award the Defendant/Counter-Plaintiff all rights in the Xpawn software and all related intellectual property rights.

b.   Enjoin the Plaintiff/Counter-Defendant and the Third-Party Defendant from using, selling, distributing, or transferring the Xpawn software to any third-party.

c.   Mandate that the Plaintiff/Counter-Defendant and the Third-Party Defendant surrender all information related to the Xpawn software including all copies of the source code and any other technical information related to the Xpawn software, surrender any and all information related to third-parties who may have possession of the Xpawn software including customer lists and support information.

d.   Strike the non-compete clause from the contract between the parties.

   e.   Award any other legal and equitable relief necessary under the

circumstances.

RESPECTFULLY SUBMITTED

Dated:  August 18, 2008

Derek Best
Defendant in pro per
36155 Grand River
No. 103
Farmington, Michigan 48335
(313) 204-8994