1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                          EASTERN DISTRICT OF CALIFORNIA

8

9    XCEL DATA SYSTEMS, INC., a          )   1:08-cv-0613 OWW GSA
     California corporation,             )
10                                       )   ORDER AFTER SCHEDULING
                       Plaintiff,        )   CONFERENCE
11                                       )
          v.                             )
12                                       )
     DEREK BEST, an individual, and      )
13   DOES 1 through 25, inclusive,       )
                                         )
14                     Defendants.       )
                                         )
15   _____)
     DEREK BEST,                         )
16                                       )
                       Third-Party       )
17                     Plaintiff,        )
                                         )
18        v.                             )
                                         )
19   MICHAEL MORENO,                     )
                                         )
20                     Third-Party       )
                       Defendant.        )
21                                       )
     _____)
22

23

24   I.   Date of Scheduling Conference.

25        September 19, 2008.

26   II.  Appearances Of Counsel.

27        Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP

28   by James M. Duncan, Esq., appeared on behalf of Plaintiffs Xcel

                                    1

1  Data Systems, Inc., and Michael Moreno.

2      John F. Early, Jr., Esq., appeared on behalf of Defendant

3  Derek Best.

4  III.  Summary of Pleadings.

5      1.   Plaintiff Xcel Data Systems, Inc., has previously

6  informed the Court that it is presently a suspended corporation.

7  The Court has, by previous order, granted Xcel Data Systems,

8  Inc., until September 30, 2008, to reinstate its corporate status

9  with the California Secretary of State.

10     2.   On August 19, 2008, Defendant Derek Best filed a

11 Counter-Claim and Third-Party Complaint, adding Michael Moreno,

12 an individual, as a Third Party Defendant to this action.

13 Michael Moreno has answered and intends to file a counter-claim.

14     Plaintiff's Contentions

15     3.   Xcel Data Systems ("Xcel") contends as follows:

16     4.   In 2001, Michael Moreno ("Moreno") and Derek Best

17 ("Best") incorporated Xcel, which was producing and marketing

18 computer software known as Xpawn.  In March 2002 an agreement was

19 entered into between Moreno and Xcel on the one hand, and Best on

20 the other, by which Xcel and Moreno agreed to purchase the Xpawn

21 software and to acquire Best's interest in Xcel.  The agreement,

22 entitled the "Software Purchase Agreement" (the "Agreement"), was

23 primarily drafted by Best, reviewed by Bakersfield Attorney Greg

24 L. Ferrari and executed by all parties in Bakersfield,

25 California.

26     5.   Under the terms of the Agreement, Best agreed to sell

27 to Xcel and Moreno (collectively, the "Purchasers"), among other

28 things, one hundred percent ownership in the Xpawn software and

1   all service contracts for the Xpawn software.  The copyright in
2   Xpawn, and an assignment of the same, was to be held in escrow
3   with a mutually agreed-upon Third Party for the duration of the
4   performance of the Agreement.  Upon the completion of the
5   purchasers' performance, the assignment of the Xpawn software was
6   to be released to the Purchasers.  It was Best's obligation under
7   the Agreement to engage a third party escrow agent.  Best never
8   engaged a third party escrow agent.  Best also agreed to transfer
9   and assign to the Purchasers the domain name XPawn.com upon
10  execution of the Agreement.

11          6.    In consideration for the rights to the software, the
12  Purchasers agreed to pay the sum of $69,154.30 to Best, which was
13  payable with an initial payment of $20,000 and the balance
14  payable with eight percent interest in 48 monthly installments of
15  $1,200.00.  The Purchasers also agreed to pay Best the sum of
16  $12,500 in payment for an outstanding capital loan, which was
17  paid at the execution of the Agreement.  As further
18  consideration, the Purchasers agreed to guarantee Best four
19  hundred hours of contract programming and/or support services
20  from the date of execution until January 14, 2003, where Best was
21  to be compensated at a rate of $25.00 per hour.  This obligation
22  was extinguished if Best became unable to and refused to perform
23  the services.  The Purchasers also agreed to pay Best a royalty
24  of $150.00 per copy of Xpawn which was sold or licensed for a
25  period of 48 months from the date of execution of the Agreement.

26          7.    Under the Agreement, Best was granted an exclusive
27  royalty-free license to sell the Xpawn software in the United
28  Kingdom for a period of forty years and Xcel and Moreno agreed.

                                   3

1  The Purchasers agreed that they would not distribute, sell,

2  license, etc., the Xpawn software in the United Kingdom.  Best

3  agreed that for a period of seven years that he would not sell

4  competing software outside of the United Kingdom for a period of

5  seven years.

6       8.   Following execution of the Agreement, in performance of

7  their obligations, the Purchasers made the monthly payments set

8  forth in the Agreement for a period of approximately twenty-six

9  months.  The Purchasers also paid Best the royalty required under

10  the terms of the Agreement.  In addition, the Purchasers engaged

11  Best to perform contract programming work.

12       9.   In contrast, Best failed to perform a number of

13  material obligations under the Agreement.  Among these failed

14  obligations, Best failed to designate a third party escrow agent

15  to hold the copyright assignment.  He failed to transfer the

16  Xpawn.com domain name thereby compelling the Purchasers to file

17  an arbitration action under the Uniform Domain Name Dispute

18  Resolution Policy to compel transfer of the domain name.  When

19  the Purchasers referred contract services to Best, on a number of

20  occasions, Best stopped working on the projects which made him

21  unreliable in providing the needed services.  Most significantly,

22  notwithstanding Best's agreement to transfer all rights in the

23  Xpawn software to the Purchasers and his agreement to not sell

24  competing software outside of the United Kingdom, shortly after

25  executing the Agreement Best continued to market and sell the

26  Xpawn software in the United States, to create derivative works

27  in the same.  In addition, notwithstanding his agreement to

28  transfer all service contracts in the Xpawn software to the

4

1   Purchasers, Best provided technical support and custom

2   programming for a number of Xpawn users.

3       10.   The Purchasers made demand upon Best to cease sales of

4   the Xpawn software in the United States but Best continued to

5   sell the exact same software to which, under the terms of the

6   Agreement he had granted completely to the Purchasers except for

7   rights in the United Kingdom.

8       11.   In February 2008, based on the claim that the

9   Purchasers failed to perform under the Agreement, counsel for

10  Best made demand upon the Purchasers to cease using, selling, and

11  distributing the Xpawn software and to return all source code,

12  files, documentation and related items to Best.  Xcel thereafter

13  filed a complaint for declaratory relief in the Kern County

14  Superior Court.  Best thereafter removed this matter to this

15  Court.

16      12.   Xcel contends that Best materially breached the

17  Agreement by the activities discussed above.  Xcel further

18  contends that it substantially performed its obligations under

19  the Agreement, and was excused from any non-performance by Best's

20  material breach.

21      13.   Xcel seeks a declaration of judgment that the

22  Purchasers substantially performed their obligations under the

23  Agreement, that any non-performance was excused by Best's

24  material breach of his various obligations under the Agreement,

25  and that the Purchasers have no further obligations under the

26  Agreement.  Xcel further seeks a declaration of judgment that the

27  Purchasers are the owners of copyrights, trademarks, and rights

28  related to the Xpawn software subject to no claim of right by

                              **5**

1 | Best.  Xcel further seeks a recovery of attorney's fees as
2 | provided for under the Agreement.

3 |     <u>Defendant's Contentions</u>.

4 |     14.  In 1996 Defendant, Best, decided to create a Pawn shop
5 | computer system for Microsoft Windows, and after great effort it
6 | was ready for use by 1999.  He began to sell and support the
7 | program which was called "Xpawn" and obtained a U.S. Copyright on
8 | the Xpawn software.

9 |     15.  But it was very difficult for Best to work by himself
10 | so he made an arrangement to go into business with Moreno in
11 | Bakersfield, California.  They formed a new company named "Xcel
12 | Data Systems, Inc."  Fairly soon, Best became uncomfortable with
13 | the situation there.  Moreno's managerial style was very
14 | disorganized, and he seemed to be always operating in crisis
15 | mode.  They argued frequently and the relationship deteriorated.
16 | Finally, in frustration, Best offered to sell Xpawn to Moreno on
17 | an installment plan, with title passing to him when he completed
18 | all payments due.

19 |     16.  He agreed instantly, as if he had been expecting and
20 | waiting for such a thing.  He retained attorney (Greg Ferrari) to
21 | draw up an agreement.  The agreement was not drafted by Best who
22 | is not an attorney and lacked the skill and knowledge to write
23 | such a document.

24 |     17.  The parties signed the contract at Ferrari's office.
25 | Best spent two or three days giving Moreno all passwords,
26 | usernames, source code, customer lists, contact names, website
27 | codes and scripts, etc.  There were some loose ends which were
28 | inevitable because Moreno wanted Best to leave fairly quickly.

Among the "loose ends" was the transfer of the Xpawn domain name. We simply could not find anyone who could tell us authoritatively how to do that.  We agreed that when Moreno acquired the necessary documents he would send them to me and I would sign them.  The documents were finally sent to me by attorney James Duncan many years later, only because of the fact that the domain name was apparently about to expire and so once again Moreno was reacting to a crisis.

18.  The contract had numerous terms and conditions, but essentially provided that the Plaintiff was to pay the Defendant for the Xpawn Software, some additional support services, and for various other items.  The Plaintiff was to pay most of the consideration in installments extending over a 48 month term. The contract also required the Plaintiff to pay the Defendant a royalty of $150.00 per copy for every copy of Xpawn sold by the Plaintiff over a 48 month period of time.  The contract also included non-compete provisions that prohibited the Defendant from providing support to the Plaintiff's customers or from selling them any software without the Plaintiff's approval.

19.  In addition, the contract included a security agreement, which stated that the ownership of Xpawn Software and the other subjects of the contract automatically reverted to the Defendant upon the Plaintiff's failure to pay any amount due under the agreement.

20.  Certain amounts were paid under the agreement, however, the Plaintiff is in default and still owes a substantial number of installments, the royalties called for in the contract, an amount for additional support and programming, and the

1   Defendant's attorney's fees.

2      21.  The Plaintiff breached the contract by failing to pay

3   the Defendant.  The Plaintiff also breached the contract by

4   failing to fulfill other terms of the agreement.  Upon failure of

5   the Plaintiff to perform the contract, ownership of the software

6   automatically reverted back to the Defendant.  The non-compete

7   provisions in the contract are overbroad and oppressive and

8   should be struck from the contract.  The Defendant should be

9   permitted to provide support to the users of Xpawn software

10  without any interference from the Plaintiff.

11     22.  The Defendant is seeking damages and compensation for

12  legal fees as provided for in the contract.  The Defendant is

13  seeking damages for the Plaintiff's violation of the Defendant's

14  copyright in the software.  The Defendant is also seeking to

15  restrain the Plaintiff from selling or distributing the software.

16  IV.  Orders Re Amendments To Pleadings.

17     1.  Amendments required by Plaintiff:  Once its corporate

18  status has been reinstated, Xcel anticipates that amendment of

19  its complaint will be necessary.

20     2.  Amendments required by Defendant: the Defendant may

21  seek to amend the Counterclaim and the Third-Party Complaint

22  based on the answers filed by the Plaintiff and the Third-Party

23  Defendant or other facts that may become known through discovery.

24  The Defendant's attorney is reviewing all of the documents filed

25  thus far in the action and may make certain other amendments

26  based on the review.

27     3.  The parties agree that any amendments shall be

28  accomplished by stipulation and shall be filed on or before

**8**

1   October 20, 2008.

2   V.   Factual Summary.

3        A.   Admitted Facts Which Are Deemed Proven Without Further
4   Proceedings.

5             1.   The Agreement was executed in Bakersfield,
6   California, by Best and Moreno, individually and on behalf of
7   Xcel in March 2002.

8             2.   At the execution of the Agreement, a payment of
9   $32,500 was paid to Best.

10            3.   Xcel has continued to market and distribute the
11  Xpawn software in the United States.

12            4.   Best has obtained a copyright registration in the
13  United States for the Xpawn software.

14            5.   No assignment of the Xpawn software has ever been
15  deposited into a third-party escrow.

16       B.   Contested Facts.

17            1.   Whether the Agreement was substantially prepared
18  by Best.

19            2.   Whether Best received any of the monthly payments
20  due under the Agreement.

21            3.   Whether Best received any of the royalty payments
22  due under the Agreement.

23            4.   Whether Best ever served a notice of default on
24  Purchaser.

25            5.   Whether, after execution of the Agreement, Best
26  was marketing, distributing, and selling forms of the Xpawn
27  software outside of the United Kingdom before serving any notice
28  of default on the Purchasers.

6.   Whether, after execution of the Agreement, Best was providing programing services to purchasers of the Xpawn software before serving any notice of default on the Purchasers.

7.   Whether the Plaintiff has paid the royalties provided for in paragraph 1.06 of the agreement in the amount of 50% of all licensing revenues for pawn magic.

8.   Whether the Plaintiff distributed all profits or draws remaining due to the Defendant as of March 31, 2002.

9.   Whether the Plaintiff paid the Defendant for the minimum of 400 hours of programming and support.

10.   Whether the Defendant was removed from the notes and leases of the Plaintiff by March 31, 2002, as required by paragraph 1.03(k) of the contract.

11.   Whether the Plaintiff issued the Defendant 100 shares of Xcel stock.

12.   Whether the Plaintiff paid the late payments required by 3.02(b)(ii).

13.   Whether the Plaintiff removed the copyright designation from the opening screen of the Xpawn Software.

VI.   Legal Issues.

A.   Uncontested.

1.   Jurisdiction exists under 28 U.S.C. § 1331 and the United States Copyright Act.

2.   The matter of venue is disputed.  There is a motion under submission concerning the proper place for trial.

3.   For supplemental claims under 28 U.S.C. § 1367, the parties agree that the substantive law of the State of California provides the rule of decision.

10

1      B.    Contested.

2          1.    Whether the suspension of Xcel by the California

3  Secretary of State was a breach of the Agreement.

4          2.    Whether all interest in the Xpawn software reverts

5  to Best subject to a provision in the Agreement granting Best a

6  security interest in the software and the other assets

7  transferred to the Plaintiff.

8          3.    Whether Best materially breached the Agreement.

9          4.    Whether material breaches of the Agreement by Best

10 excused the Purchasers from further performance.

11         5.    Whether the Purchasers materially breached the

12 Agreement.

13         6.    Whether material breaches of the Agreement by the

14 Purchasers excused Best from further performance.

15         7.    Whether, in view of the equities, reformation of

16 the Agreement is required.

17         8.    Whether, in view of the equities, rescission of

18 the Agreement is required.

19         9.    Whether the Plaintiff can prevent the Defendant

20 from providing support to the users of Xpawn software.

21 VII. Consent to Magistrate Judge Jurisdiction.

22     1.    The parties have not consented to transfer the

23 case to the Magistrate Judge for all purposes, including trial.

24 VIII.      Corporate Identification Statement.

25     1.    Any nongovernmental corporate party to any action in

26 this court shall file a statement identifying all its parent

27 corporations and listing any entity that owns 10% or more of the

28 party's equity securities.  A party shall file the statement with

its initial pleading filed in this court and shall supplement the statement within a reasonable time of any change in the information.

IX.   Discovery Plan and Cut-Off Date.

   1.   The parties have agreed to have the matter referred to voluntarily dispute resolution.  Before commencement of discovery, the parties shall obtain the form for such consent from the Courtroom Deputy and discovery will be held in abeyance pending completion of the voluntary dispute resolution.  The parties are advised to notify the Court once the voluntary dispute resolution proceedings have concluded, as to whether such proceedings have been successful.

   2.   The parties have agreed to make their initial disclosures within thirty (30) days following the conclusion of voluntary dispute resolution proceedings.

   3.   If voluntary dispute resolution is unsuccessful, a scheduling conference shall be held within forty-five (45) days following the parties' notification that voluntary dispute resolution has not succeeded.  The Courtroom Deputy shall set the further scheduling conference in accordance with the parties' notice.

IT IS SO ORDERED.

Dated:   September 19, 2008          /s/ Oliver W. Wanger
                                UNITED STATES DISTRICT JUDGE