**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| XCEL DATA SYSTEMS, INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DEREK BEST, an individual, and DOES 1 through 25, inclusive,<br><br>　　　　　Defendants. | 1:08-CV-00613-OWW-GSA<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND (DOC. 10) |

## 1. INTRODUCTION

On March 25, 2008, Plaintiff XCEL Data Systems, Inc. ("XCEL") filed a complaint in the Superior Court of the State of California, County of Kern, alleging breach of contract by Defendant Derek Best. Compl. On May 2, 2008, Defendant Derek Best ("Best") removed the action to federal court on federal question and diversity jurisdiction grounds. Doc. 1, Def.'s Notice of Removal. Plaintiff XCEL moves to remand. Doc. 10, filed May 28, 2008, Pl.'s Mot. Remand. Oral argument was heard July 21, 2008.[1]

---

[1] On July 15, 2008, Plaintiff XCEL filed a notice that its corporate status was suspended and requested that the pending motions before the court be continued pending revival of its corporate status. Doc. 20, Pl.'s Notice Corporate Status. XCEL alternatively requested the court to remand the action, *sua sponte*, on the ground that it does not have subject matter jurisdiction.
　　Fed. R. Civ. P. 17 provides that a corporation's capacity to

1

## 2. **BACKGROUND**

From 1997 to 1998, Defendant Derek Best developed Microsoft Windows based computer software known as XPAWN. Doc. 15, filed July 7, 2008, Def.'s Opp'n Pl.'s Mot. Remand, Ex. II, Derek Best Decl. Opp'n Pl.'s Mot. Remand ¶ 3. XPAWN is designed to manage transactions for small, independent pawnshops. Best began selling the software for commercial use in 1999 and launched the website "xpawn.com" during the same period. *Id*. ¶¶ 3, 6. On June 28, 2000, Best received a certificate of copyright registration for the software. Doc. 15, Def.'s Opp'n Pl.'s Mot. Remand, Ex. I. That same month he moved to California and entered into a partnership with Michael Moreno, the author of another, older software program for pawnshops. Doc. 15, Def.'s Opp'n Pl.'s Mot.,

---

sue or be sued is determined by the law of the state under which it was organized. Fed. R. Civ. P. 17(b)(2). The capacity to sue "is the right to come into court." *Color-Vue, Inc. v. Abrams*, 44 Cal.App.4th 1599, 1604 (1996). Incapacity is a legal disability that deprives a party of the right to come into court. *Id*. Since California is the state in which XCEL was incorporated, XCEL's capacity to be sued is tested under California law. Under California law, a court has the discretion to grant a continuance where a party's corporate status is suspended and lacks capacity to sue. *Id*. at 1603.

At oral argument, Plaintiff was directed to reinstate its corporate status within 30 days. On August 19, 2008, Plaintiff filed a request for extension of time to submit a certificate of revivor. (Doc. 36.) The request was granted and Plaintiff was given until September 30, 2008 to reinstate its corporate status. (Doc. 41.) On September 30, Plaintiff requested an additional extension because when it submitted its application to revive its corporate status, the application was denied because in the interim period the name "Xcel Data Systems, Inc." had been taken by a third party. (Doc. 47.) For good cause shown, Plaintiff's request is GRANTED. On October 10, 2008, Plaintiff submitted a Certificate of Status from the Secretary of State of the State of California showing Plaintiff is a domestic corporation in good standing. (Doc. 53.)

Ex. II, Derek Best Decl. Opp'n Pl.'s Mot. Remand ¶¶ 7-9. A year later Best and Moreno formed XCEL Data Systems, Inc., the plaintiff in this action. *Id*. Best and Moreno were co-directors of XCEL Data Systems, Inc., which sold both Moreno's older program and Best's XPAWN software, and was based in Bakersfield, California. *Id*. As co-directors, Best and Moreno jointly leased property, took out loans, and operated XCEL. *Id*.

Best grew dissatisfied for reasons not relevant here and parted ways with Moreno. *Id*. ¶¶ 10, 14. On March 6, 2002, Moreno and Best entered into a Software Purchase Agreement (the "contract") in which Best agreed to resign as co-director, surrender any shares he owned, and transfer to XCEL all rights associated with XPAWN, including intellectual property, among other things, such as the "xpawn.com" domain name and website. Contract §§ 1.01, 1.03(f)-(j). The contract required a third-party to keep the copyright and trademark certificates in escrow until "[XCEL's] satisfactory performance," and, until the certificates' release, XCEL agreed not to remove from XPAWN's opening screen the words "© Copyright: Derek Best." *Id*. §§ 1.01(b), 3.06. In consideration of the sale, XCEL promised Best $69,154.30 (purchase price), profits or draws due as of March 31, 2002, repayment of $12,500 in loans, a $150 royalty fee for each software sold, rented, or licensed within 48 months of the contract's execution, and $10,000 in fees for servicing Best agreed to render. *Id*. §§ 1.01(a)-(d). XCEL also agreed to assume all notes and leases Best had entered into as co-director. *Id*. § 1.01(k). The contract also gave Best an exclusive license to sell, distribute, and use the software in the United Kingdom and

3

retain as security ownership in the software and associated intellectual property. *Id*. §§ 1.04(a), 3.05. The contract closed in Bakersfield, California "or such other location as may be agreed upon," with a provision specifying California law as the choice of law and a provision providing for attorneys' fees. *Id*. §§ 1.07, 5.14-15.

After the contract was executed, Best allegedly developed substantial modifications to XPAWN, including additional modules and interface compatibility with the "Quickbooks" accounting system, which Best claims created an independent copyright in those modifications. Doc. 15, Def.'s Opp'n Pl.'s Mot., Ex. II, Derek Best Decl. Opp'n Pl.'s Mot. Remand ¶¶ 18, 20. Best claims these modifications constitute a derivative work not subject to the terms of the contract. Doc. 15, Def.'s Opp'n Pl.'s Mot. Remand at 4.

Best apparently sent XCEL a cease-and-desist letter dated February 24, 2008 that claims XCEL breached the contract by failing to make payments. Doc. 14, filed July 2, 2008, James M. Duncan Decl., Ex. C, Cease and Desist Letter. The letter also claims ownership of XPAWN and associated intellectual property. *Id*. A month later XCEL filed a complaint alleging breach of contract arising from Best's failure to place the copyrights and registration certificates in escrow, failure to transfer ownership in the domain name and other intellectual property, and competition against XCEL through the continued sale, distribution, and use of the software in the United States. Compl. ¶ 16. The complaint seeks a declaration that the contract was terminated by Best's failure to perform and that

> plaintiff is the owner of all copyrights, trademarks, and rights related to the software, and the plaintiff is the owner of the software itself, and all intellectual property rights in the software subject to no claim of right by the defendants.

Compl. "Prayer." In addition, the complaint seeks a declaration that XCEL is under no further obligation under the contract. *Id*. The complaint also seeks costs of suit incurred, including reasonable attorney's fees allegedly in excess of $5,000 as authorized under the contract. *Id*.

XCEL originally filed this action in the Superior Court of the State of California, County of Kern. Best removed the case to federal district court pursuant to 28 U.S.C. § 1446(b). Doc. 1, Def.'s Notice of Removal ¶ 2. Best asserts federal question jurisdiction exists under 28 U.S.C. § 1331 because the complaint alleges claims that arise under federal copyright laws. Best asserts a declaration of the parties' respective rights requires an application of federal copyright laws to determine the scope of the copyright assigned to XPAWN, given the existence of Best's derivative work. Doc. 15, Def.'s Opp. Pl.'s Remand at 16-17. Best argues the complaint alleges infringement and seeks a remedy expressly granted by the Copyright Act. *Id*. at 12-14. Best also asserts diversity jurisdiction exists under 28 U.S.C. § 1332 because plaintiff is a California corporation with its principal place of business in California, defendant resides in Michigan, and the amount in controversy allegedly exceeds $75,000 in potential pecuniary losses to defendant, exclusive of interest and costs. *Id*. at 11.

XCEL moves to remand the action to state court, arguing that the district court lacks federal question jurisdiction because

the claims do not arise under federal copyright laws. Doc. 10, Pl.'s Mot. Remand. XCEL contends that a declaration of the parties' respective rights involves an interpretation of the underlying contract as opposed to an application of federal copyright laws. Doc. 16, filed July 14, 2008, Pl.'s Reply 6. XCEL argues its ownership rights are derived from the contract, and that its claims are based on state law. *Id*. XCEL argues it has not asserted any claims alleging infringement and does not seek a remedy expressly granted by the Copyright Act. *Id.* XCEL further argues that the district court lacks diversity jurisdiction because the complaint only alleges reasonable costs exceeding $5,000 and the defendant has not provided competent evidence that his potential pecuniary losses exceed $75,000, exclusive of interest and costs. *Id*. at 2. This is also shown by Best's settlement letter dated May 1, 2008 that XCEL contends reflects Best's estimate of the value of the action to be $35,000. Doc. 17, filed July 14, 2008, James M. Duncan Decl. Supp. Pl.'s Reply, Ex. 1, Settlement Letter.

### 3. DISCUSSION

A. <u>Motion to Remand</u>.

Plaintiff moves to remand this action to state court on grounds that: 1) diversity jurisdiction is lacking because the amount in controversy does not exceed the jurisdictional minimum, and 2) federal question jurisdiction is lacking because this dispute does not arise under federal copyright law.

A district court may remand to state court a case that has been removed to district court if at any time it appears that the

district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Removal is generally proper when the district court has original jurisdiction over the action. *See* 28 U.S.C. § 1441; *Duncan v. Stuetzle*, 76 F.3d 1480 (9th Cir. 1996). Jurisdiction must be determined from the face of the complaint, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987), and it must be clear from the face of the complaint under the well-pleaded complaint rule that federal subject matter jurisdiction exists. *Okla. Tax Comm'n. v. Graham*, 489 U.S. 838, 840-41 (1989) (per curiam). Under this rule, the plaintiff is the master of his or her claim. *Caterpillar*, 482 U.S. at 392. A plaintiff may avoid federal jurisdiction by exclusive reliance on state law. *Id*. However, a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint. *Franchise Tax Bd. of the State of Cal. v. Const. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 22 (1983). Jurisdiction is tested at the time of removal.

**1)  Does Diversity Jurisdiction Exist?**

Diversity jurisdiction exists in cases where the amount in controversy exceeds $75,000 and the parties on opposing sides do not have any form of citizenship in common. 28 U.S.C. § 1332(a). While the burden of proof is generally on the plaintiff to substantiate the amount of the claim, "in cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

A party generally establishes the jurisdictional amount "from the face of the pleadings," *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000), though it may consider "facts presented in the removal petition as well as any 'summary-judgement-type evidence relevant to the amount in controversy at the time of removal.'" *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (quoting *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003)).

Here diversity of citizenship is uncontested. As the party asserting diversity jurisdiction, Best must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Monumental Life*, 102 F.3d at 404. In order to meet the jurisdictional minimum, a party need not establish

> absolute certainty in valuation of the right involved . . . but rather the requirement is that there be a reasonable probability of an amount in controversy exceeding [the] jurisdictional amount if an amount can be ascertained pursuant to some realistic formula.

*Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975). Conclusory allegations are insufficient. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992).

In determining whether the amount in controversy has been met, the Ninth Circuit has adopted the "either viewpoint rule" for cases involving a single plaintiff seeking injunctive or declaratory relief. *Ridder Bros. Inc., v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) ("The value of the 'thing sought to be accomplished by the action' may relate to either or any party to the action.") (citations omitted). Under this test, the amount in controversy is satisfied when the pecuniary result the judgment

directly produces to either party exceeds $75,000. *In re Ford Motor Co./Citibank (S. Dak.), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). "In other words, where the value of a plaintiff's potential recovery . . . is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes." *Id*.

XCEL claims it made payments under the contract leaving a remaining balance of $26,400. Doc. 18, Michael Moreno Decl. Supp. Pl.'s Mot. Remand ¶ 6-7. However, Best contends he never received $100,100 in payments, loan repayments, or servicing fees guaranteed under the contract. Doc. 15, Def.'s Opp'n Pl.'s Mot. Remand 8; *see also* Contract §§ 1.03(a)-(c). To establish by a preponderance of the evidence that the amount in controversy meets the jurisdictional minimum, Best must show that the potential pecuniary loss to him, more likely than not, exceeds $75,000. A judicial declaration that XCEL does not owe $100,100 in allegedly outstanding amounts is a potential pecuniary loss Best could incur. This meets the jurisdictional minimum. Whether or not XCEL in fact owes these amounts need not be decided here. Nor does Best need to establish "absolute certainty in [the] valuation of the right involved." *Moore*, 511 F.2d at 1006. Best's reliance on the contract's provisions furnishes a "reasonable probability of an amount in controversy exceeding [the] jurisdictional amount" since it is "an amount [that] can be ascertained pursuant to some realistic formula." *Id*. The other amounts Best asserts as a potential pecuniary loss are

speculative and lack factual support to meet the preponderance of the evidence standard. *See* Doc. 16, Pl.'s Reply.[2]

XCEL argues that because Best made an offer to settle the matter for $35,000, he has placed a substantially lower value on the action than that asserted in his opposition. Doc. 16, Pl.'s Reply 4; Doc. 17, Settlement Letter.

"A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (per curiam). In *Cohn*, the Court held that because plaintiff's settlement letter demanded $100,000 for compensation of his trademark and consistently maintained that his trademark was worth more than $100,000, the settlement letter reflected a reasonable estimate of plaintiff's claim. By itself, however, a settlement letter is not determinative, though it "counts for something." *Id.* (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994)).

---

[2] Best's claim that he is owed $60,000 in royalty fees presumes without factual support that XCEL sold 100 copies of the software each year. Best provides no evidence for the value of the shares he claims XCEL never delivered. Best's argument that he is liable for a $40,000 note and $42,000 in lease payments because XCEL has produced no evidence that it removed Best's name from the note and lease is speculative. As to the $160,000 Best claims is the value of XPAWN software, it is improper to include it in the amount-in-controversy calculation because the value is absorbed in the other payments Best claims he never received, and adding it would result in a double payment. Finally, as to the $46,000 Best claims is the likely cost of litigation, courts are divided as to whether attorney fees incurred after removal should be included in the amount-in-controversy determination. *Burk v. Medical Savings Ins.* Co., 348 F.Supp.2d 1063, 1068 (D. Ariz. 2004); *see also* Doc. 15, Def.'s Opp'n Pl.'s Mot. Remand 9-10.

Here, Best's letter does not appear to reflect a reasonable estimate of Best's claim. The last paragraph of his letter reads: "Would you please contact Xcel and ask them about at least paying me the amount due on the note, which I guess is about $35,000 [*sic*]." Doc. 17, filed July 14, 2008, James M. Duncan Decl. Supp. Pl.'s Reply, Ex. 1, Settlement Letter. This suggests the letter reflects the value of just the note and not an estimate of the whole amount involved. Moreover, unlike *Cohn,* where the plaintiff consistently valued his trademark at $100,000, the present case lacks any consistent valuation. The letter is at best one offer of compromise made by a *pro se* party. Given that the letter represents the value of just the note, the $100,100 in outstanding payments Best alleges is a more reasonable estimate of the value of his claim.

XCEL's motion to remand based on lack of diversity jurisdiction is DENIED.

**2) Is a Federal Question Presented?**

Federal courts have exclusive jurisdiction over actions that arise under federal copyright laws, but a case does not arise under federal copyright laws merely because the subject matter of the action involves a copyright. 28 U.S.C. § 1338; *Topolos v. Caldewey*, 698 F.2d 991, 993 (9th Cir. 1983); *Vestron, Inc. v. Home Box Office, Inc.*, 839 F.2d 1380, 1381 (9th Cir. 1988) ("Although the action clearly involves a copyright, this fact alone does not satisfy federal jurisdictional requirements.") (citations omitted). In general, "courts decide whether a case arises under the copyright laws by focusing on the nature of the

11

principal claim asserted by the plaintiff." *Topolos*, 698 F.2d at 993. This has variously been described as the "primary and controlling purpose," the "principal issue," the" fundamental controversy," and the "gist" or "essence" of the plaintiff's claim. *Id*. (citations omitted); *see also Dolch v. United. Cal. Bank,* 702 F.2d 178, 180 (9th Cir. 1983).

*T.B. Harms Co. v. Eliscu* articulates the test courts follow in determining whether a complaint that involves a copyright arises under federal copyright laws. *Scholastic Entertainment v. Fox Entertainment Group, Inc.*, 336 F.3d 982, 986 (9th Cir. 2003) (citing *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964)). Under the *Harms* test, an action "arises under" the Copyright Act "if and only if" (1) the complaint seeks a remedy expressly granted by the Copyright Act; (2) the complaint requires interpretation of the Copyright Act; or (3) federal principles should control the claims. *Id*. at 828.

### a. Does the Complaint Seek a Remedy Expressly Granted by the Copyright Act?

17 U.S.C. § 505 provides that as a remedy for infringement, the court may award reasonable attorneys' fees to the winning party as part of the costs. Best claims the complaint arises under federal copyright laws because the complaint seeks attorney fees and costs which are an express remedy of the Copyright Act. Doc. 15, Def.'s Opp'n Pl.'s Mot. Remand 15-16. Best is mistaken. Although XCEL seeks reasonable attorneys' fees, it does so not as a remedy for infringement so much as a remedy authorized under contract:

> In the event any litigation, arbitration, or other legal proceeding between the parties hereto in connection with the interpretation, performance or enforcement of this Agreement, the prevailing Party in such proceeding shall be entitled, in addition to equitable relief or damages or both, or other relief, recover from the non-prevailing Party all costs, expert witness fees, investigation costs and reasonable attorneys' fees.

Doc. 11, James M. Duncan Decl., Ex. B, Contract, § 5.15. This is not a remedy under the Copyright Act.

### b. Does the Complaint Require Interpretation of the Copyright Act?

XCEL contends that while the complaint involves a copyright, it does not "arise under" federal copyright laws because it concerns a bare declaration of the parties' respective rights which implicates state law only. Doc. 16, Pl.'s Reply 4-6. XCEL insists its complaint does not require an interpretation of federal copyright laws but solely concerns contract interpretation and a factual inquiry as to the scope of rights the parties intended to be conveyed under the contract. *Id*.

*Topolos* is instructive. There, the Ninth Circuit held the district court erred in concluding it lacked jurisdiction over an infringement action because "it was first required to resolve a threshold question of copyright ownership which in turn called for interpretation of a contract." *Topolos*, 698 F.2d at 994. Although copyright ownership was a threshold question, it was not the principal question, since after ownership was decided the court still had to determine whether copyright infringement occurred. *Id*. "That question properly belongs to a federal court, since it requires an examination of the works, extent of the copying involved, and an application of the Copyright Act." *Id*.

13

Only where "ownership is the sole question for consideration are federal courts without jurisdiction." *Id*.

Here, as in *Topolos*, ownership of the XPAWN software is not the "sole question" for consideration. Best alleges his modifications to XPAWN create an original copyright in those additions. Best alleges this newer version constitutes a "derivative work," that is, a "work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. Because XCEL seeks a declaration that "plaintiff is the owner of <u>all copyrights, trademarks, and rights related to the software</u>, and the plaintiff is the owner of the software itself, <u>and all intellectual property rights in the software</u> subject to no claim of right by the defendants," Compl. "Prayer" (emphasis added), XCEL presumably seeks a declaration that it owns the copyright in the derivative work in addition to that in the original XPAWN software. In declaring each party's respective ownership rights, it is necessary to examine and interpret both the original and derivative XPAWN programs and decide the scope of each copyright. *See Topolos*, 698 F.2d at 994. This question turns upon an application of the Copyright Act. Deciding ownership is not, as XCEL alleges, the "sole question."

XCEL relies on *Dolch* and *Scholastic Entertainment* to argue federal claims are not raised in the complaint. These cases are distinguishable. *Dolch* addresses whether the validity of an assignment of copyright renewal is a state law question. 702 F.2d at 180. *Scholastic Entertainment* held effective termination of a copyright license did not "arise under" federal copyright law.

14

336 F.3d at 988. Both questions involve the "bare declaration of ownership" *Topolos* teaches falls within the purview of state law, as opposed to the question presented here which demands application of federal copyright laws to determine the parties' respective ownership interests. The fact that the complaint alleges Best failed to fulfill contractual obligations does not defeat the application of federal copyright laws. XCEL may not defeat removal by omitting to plead necessary federal questions in a complaint. *Const. Laborers Vacation Trust*, 463 U.S. at 22. Because a declaration of ownership rights implicates federal copyright laws, a federal question is presented.

Plaintiff's motion to remand based on lack of federal question jurisdiction is DENIED.

### 4. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is DENIED.

SO ORDERED

Dated:  March 31, 2009

                                                  /s/ Oliver W. Wanger
                                                  Oliver W. Wanger
                                     United States District Judge