**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| XCEL DATA SYSTEMS, INC., a California corporation,<br><br>        Plaintiff,<br><br>  v.<br><br>DEREK BEST, an individual, and DOES 1 through 25, inclusive,<br><br>        Defendants. | 1:08-CV-00613-OWW-GSA<br><br>ORDER [GRANTING/DENYING] DEFENDANT'S MOTION TO TRANSFER VENUE (DOC. 5). |

### 1. INTRODUCTION

On March 25, 2008, Plaintiff XCEL Data System ("XCEL") filed a complaint in the Superior Court of the State of California, County of Kern, alleging breach of contract by Defendant Derek Best. Compl. On May 2, 2008, Defendant David Best ("Best") removed the action to federal court on federal question and diversity jurisdiction grounds. Doc. 1, Def.'s Notice of Removal. Defendant Best moves to transfer the action to the Eastern District of Michigan. Doc. 5, filed May 12, 2008, Def.'s Mot. Change Venue. Oral argument was heard July 21, 2008.[1]

---

[1] On July 15, 2008, Plaintiff XCEL filed a notice that its corporate status was suspended and requested that the pending motions before the court be continued pending revival of its corporate status. Doc. 20, Pl.'s Notice Corporate Status. XCEL alternatively requested the court to remand the action, *sua sponte*, on the ground that it does not have subject matter jurisdiction.
    Fed. R. Civ. P. 17 provides that a corporation's capacity to

1

## 2. BACKGROUND

From 1997 to 1998, Defendant David Best developed Microsoft Windows-based computer software known as XPAWN. Doc. 15, filed July 7, 2008, Def.'s Opp'n Pl.'s Mot. Remand, Ex. II, David Best Decl. Opp'n Pl.'s Mot. Remand ¶ 3. XPAWN is designed to manage transactions for small, independent pawnshops. Best began selling the software for commercial use in 1999 and launched the website "xpawn.com" during the same period. *Id*. ¶¶ 3, 6. On June 28, 2000, Best received a certificate of copyright registration for the software. Doc. 15, Def.'s Opp'n Pl.'s Mot. Remand, Ex. I. That same month he moved to California and entered into a partnership with Michael Moreno, the author of another, older software program for pawnshops. Doc. 15, Def.'s Opp'n Pl.'s Mot.,

---

sue or be sued is determined by the law of the state under which it was organized. Fed. R. Civ. P. 17(b)(2). The capacity to sue "is the right to come into court." *Color-Vue, Inc. v. Abrams*, 44 Cal. App. 4th 1599, 1604 (1996). Incapacity is a legal disability that deprives a party of the right to come into court. *Id*. Since California is the state in which XCEL was incorporated, XCEL's capacity to be sued is tested under California law. Under California law, a court has the discretion to grant a continuance where a party's corporate status is suspended and lacks capacity to sue. *Id*. at 1603.

At oral argument, Plaintiff was directed to reinstate its corporate status within 30 days. On August 19, 2008, Plaintiff filed a request for extension of time to submit a certificate of revivor. (Doc. 36.) The request was granted and Plaintiff was given until September 30, 2008 to reinstate its corporate status. (Doc. 41.) On September 30, Plaintiff requested an additional extension because when it submitted its application to revive its corporate status, the application was denied because in the interim period the name "Xcel Data Systems, Inc." had been taken by a third party. (Doc. 47.) For good cause show, Plaintiff's request is GRANTED. On October 10, 2008, Plaintiff submitted a Certificate of Status from the Secretary of State of the State of California showing Plaintiff is a domestic corporation in good standing. (Doc. 53.)

Ex. II, David Best Decl. Opp'n Pl.'s Mot. Remand ¶¶ 7-9. A year later Best and Moreno formed XCEL Data Systems, the plaintiff in this action. *Id*. Best and Moreno were co-directors of XCEL Data Systems, which sold both Moreno's older program and Best's XPAWN software, and was based in Bakersfield, California. *Id*. As co-directors, Best and Moreno jointly leased property, took out loans, and operated XCEL. *Id*.

Best grew dissatisfied for reasons not relevant here and parted ways with Moreno. *Id*. ¶¶ 10, 14. On March 6, 2002, Moreno and Best entered into a Software Purchase Agreement (the "contract") in which Best agreed to resign as co-director, surrender any shares he owned, and transfer to XCEL all rights associated with XPAWN, including intellectual property, among other things, such as the "xpawn.com" domain name and website. Contract §§ 1.01, 1.03(f)-(j). The contract required a third-party to keep the copyright and trademark certificates in escrow until "[XCEL's] satisfactory performance," and, until the certificates' release, XCEL agreed not to remove from XPAWN's opening screen the words "© Copyright: Derek Best." *Id*. §§ 1.01(b), 3.06. In consideration of the sale, XCEL promised Best $69,154.30 (purchase price), profits or draws due as of March 31, 2002, repayment of $12,500 in loans, a $150 royalty fee for each software package sold, rented, or licensed within 48 months of the contract's execution, and $10,000 in fees for servicing Best agreed to render. *Id*. §§ 1.01(a)-(d). XCEL also agreed to assume all notes and leases Best had entered into as co-director. *Id*. § 1.01(k). The contract also gave Best an exclusive license to sell, distribute, and use the software in the United Kingdom and

retain as security ownership in the software and associated intellectual property. *Id.* §§ 1.04(a), 3.05. The contract closed in Bakersfield, California "or such other location as may be agreed upon," with a provision specifying California law as the choice of law and an attorneys' fees provision. *Id.* §§ 1.07, 5.14-15.

After the contract was executed, Best allegedly developed substantial modifications to XPAWN, including additional modules and interface compatibility with the "Quickbooks" accounting system, which Best claims created an independent copyright in those modifications. Doc. 15, Def.'s Opp'n Pl.'s Mot., Ex. II, David Best Decl. Opp'n Pl.'s Mot. Remand ¶¶ 18, 20. Best claims these modifications constitute a derivative work not subject to the terms of the contract. Doc. 15, Def.'s Opp'n Pl.'s Mot. Remand at 4.

Best apparently sent XCEL a cease-and-desist letter dated February 24, 2008 that claims XCEL breached the contract by failing to make payments. Doc. 14, filed July 2, 2008, James M. Duncan Decl., Ex. C, Cease and Desist Letter. The letter also claims ownership of XPAWN and associated intellectual property. *Id.* A month later XCEL filed a complaint alleging breach of contract arising from Best's failure to place the copyrights and registration certificates in escrow, failure to transfer ownership in the domain name and other intellectual property, and competition against XCEL through the continued sale, distribution, and use of the software in the United States. Compl. ¶ 16. The complaint seeks a declaration that the contract was terminated by Best's failure to perform and that

> plaintiff is the owner of all copyrights, trademarks, and rights related to the software, and the plaintiff is the owner of the software itself, and all intellectual property rights in the software subject to no claim of right by the defendants.

Compl. "Prayer." In addition, the complaint seeks a declaration that XCEL is under no further obligation under the contract. *Id*. The complaint also seeks costs of suit incurred, including reasonable attorney's fees allegedly in excess of $5,000 as authorized under the contract. *Id*.

XCEL originally filed this action in the Superior Court of the State of California, County of Kern. Best removed the case to federal district court pursuant to 28 U.S.C. § 1446(b). Doc. 1, Def.'s Notice of Removal ¶ 2. Best asserts federal question jurisdiction exists under 28 U.S.C. § 1331 because the complaint alleges claims that arise under federal copyright laws. Best asserts that a declaration of the parties' respective rights requires an application of federal copyright laws to determine the scope of the copyright assigned to XPAWN, given the existence of Best's derivative work. Doc. 15, Def.'s Opp. Pl.'s Remand at 16-17. Best argues the complaint alleges infringement and seeks a remedy expressly granted by the Copyright Act. *Id*. at 12-14. Best also claims diversity jurisdiction exists under 28 U.S.C. § 1332 because plaintiff is a California corporation with its principal place of business in California, defendant resides in Michigan, and the amount in controversy allegedly exceeds $75,000 in potential pecuniary losses to defendant, exclusive of interest and costs. *Id*. at 11.

Best moves to transfer venue to the Eastern District of Michigan, arguing that his medical condition makes travel to

California substantially burdensome, his key witnesses[2] reside in or near Michigan, the acts of alleged copyright infringement occurred in Michigan, and Michigan has a greater interest than California in the disposition of the action. Doc. 5, filed May 12, 2008, Def.'s Mot. Change Venue.[3] In support of his claim that his medical condition makes travel to California burdensome, Best submits a letter written by his physician, Dr. Martin I. Belkin.[4]

---

[2] Best provides a partial list of key witnesses:
    (1) Mr. Sheldon Stone of Cash City, Detroit, MI
    (2) A representative of Diamond Pawn, Mansfield, OH
    (3) Mr. Ronnie Berger of Main Street Pawn, Pontiac, MI
    (4) Mr. Lee Manes of Sam's Loan Emporium of Toledo, OH
    (5) Mr. Brett Fine of Sandel's Loan, Youngstown, OH
    (6) Mr. David Berke of Rich's Pawn Shop, Dayton, OH
    (7) Mr. Aaron Tet of Fall River Pawn Shop, Fall River, MA, who is willing to travel to Michigan
    (8) Mr. Leslie Gold of American Jewelry, Detroit, MI, who is "intimately familiar with the business arrangements between the Plaintiff and the Defendant"
    (9) Mr. Edward Bean of Suffolk Jewelry, Boston, MA, who is also willing to travel to Michigan
    (10) Mr. Craig Rabiner of Kohns Loan, Lima, OH
    (11) Mr. David Adelman, Jerry's Pawn Shop, Atlanta, GA
    (12) Mr. Ric Blum, Ohio Loan Co., Dayton, OH,
    (13) Mr. Thomas Labret of Zeidman Loan, Detroit, MI.
Doc. 5, Def.'s Mot. Change Venue, Ex. II, Witness List.

[3] A filing error resulted in the issuance of a new case number, 1:08-CV-00647-LJO-SMS, to defendant's motion to transfer venue. Plaintiff moved to consolidate cases. Doc. 8, filed May 28, 2008, Pl.'s Mot. Consolidate Cases. On May 28, 2008, U.S. District Judge Lawrence O'Neill issued an order dismissing 1:08-CV-00647-LJO-SMS as duplicative of this case. (Doc. 4.) Plaintiff's motion to consolidate was denied as moot. (Doc. 69.)

[4] Dr. Martin I. Belkin's letter states, in relevant part: "It would be extremely difficult to arrange [] treatments outside this state [i.e., Michigan], and missing his [i.e. Best] regular scheduled therapy would place him at risk for further progression of his already significant muscle weakness . . . . At this point his ability to travel for any length of time is limited, as missing his regular scheduled treatment could very well have a detrimental effect on his health. Therefore, if appropriate

Doc. 24, filed July 17, 2008, Def.'s Br. Supp. Opp'n Pl.'s Reply, Ex. II, Physician's Letter. In turn, XCEL asserts proper venue is in Kern County, California as the contract was entered into and the events occurred there. Doc. 10, Pl.'s Mot. Remand. XCEL opposes transfer to the Eastern District of Michigan on the ground that federal subject matter jurisdiction is lacking. Doc. 13, filed on July 2, 2008, Pl.'s Opp'n Def.'s Mot. Change Venue.

### 3. DISCUSSION

**A. Motion to Transfer Venue.**

A motion to transfer venue from one district court to another is governed by 28 U.S.C. § 1404(a), which provides, in relevant part: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. The goal behind 28 U.S.C. § 1404(a) "is to prevent waste 'of time, energy, and money,' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612 (1964) (citations omitted).

The analysis involved in a motion to transfer is twofold. The court must first decide whether the action is one that "might have been brought" in the transferee court. Then the court must decide whether transfer is appropriate, considering "the convenience of parties and witnesses" and "the interest of

---

arrangements can be made for him to provide any necessary information (testimony) by telephone, it would, without question, be in his best interest, medically and healthwise [*sic*]." Doc. 24, Def.'s Br. Supp. Opp'n Pl.'s Reply, Ex. II, Letter.

7

justice." § 1404(a). "If it serves the convenience of the parties and witnesses, and if it is consistent with the interests of justice, a court may, in its discretion, transfer an action to any district where the case could have originally been filed." *Deputy v. Long-Term Disability Plan of Sponsor Aventis Pharms.*, 2002 WL 31655328 at *2 (N.D. Cal. 2002) (citing 28 U.S.C. § 1404). The defendant has the burden of making a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *L.L. Smith Trucking Co., Inc. v. Hughes Bros. Aircrafters, Inc.*, 2001 WL 267694 at *9 (D. Or. 2001) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Deputy*, 2002 WL 31655328 at *2; *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 278-279 (9th Cir. 1979).

**1. "For the convenience of parties and witnesses" and "In the interest of justice."**

"The decision whether to transfer venue lies in the discretion of the district court." *L.L. Smith Trucking, Inc.*, 2001 WL 267694 at *9 (citing 28 U.S.C. § 1404); *see also Creative Tech., Ltd. v. Aztech Sys. Pte Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995) (forum *non conveniens* determination committed to sound discretion of the trial court); *Deputy*, 2002 WL 31655328 at *2. "A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones v. GNC Franchising, Inc.* 211 F.3d 495, 498 (9th Cir. 2000). These factors include:

>        (1) convenience of the parties;
>        (2) convenience of the witnesses;
>        (3) the location where the relevant agreements were negotiated and executed;
>        (4) the state most familiar with the governing law
>        (5) plaintiff's choice of forum;
>        (6) the differences in the costs of litigation in the two forums;
>        (7) the availability of compulsory process to compel attendance of unwilling nonparty witnesses;
>        (8) the ease of access to sources of proof;
>        (9) in the interest of justice.

*Id.* at 498-499.

"The difference in substantive law will not be relevant to transfer under 28 U.S.C. § 1404(a), the statutory replacement for domestic forum *non conveniens* in federal courts. A transfer under § 1404(a) results in a change of courtrooms, not a change of law." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) citing *Van Dusen*, 376 U.S. at 636-37; *see also Ferens v. John Deere Co.*, 494 U.S. 516, 524-25 (1990).

Each factor is discussed.

(1) *Convenience of the parties*. Defendant Best requests a transfer which Plaintiff XCEL opposes. Defendant Best resides in Michigan, does no business in California, and has a progressive neurological disorder known as multifocal motor neuropathy that requires four or five consecutive days of intravenous treatment every four weeks that is closely monitored by a trained IV nurse. Doc. 5, Def.'s Mot. Change Venue, Ex. I, David Best Aff. ¶ 4;

Doc. 27. Dr. Martin Belkin, Best's physician, states that his insurance provider likely will not make arrangements for treatment in California and that travel outside Michigan for any length of time should be limited since missing regularly scheduled treatment is detrimental to Best's health. Doc. 24, Physician's Letter. Dr. Belkin also explains that Best is significantly impaired with weakness in his upper extremities that limits his ability to perform routine daily activities. Doc. 27. He requires assistance to perform activities of daily living, which is currently provided by his wife. *Id*. With the regular treatments he receives, Defendant maintains reasonable motor function in his hands and arms.

Plaintiff XCEL is based in Bakersfield, California and its director, Michael Moreno, resides in Bakersfield. It would be more convenient for Plaintiff to proceed with the litigation in the Eastern District of California, given that he resides and operates a business in this district.

Although courts have held that "any inconvenience that might enure to counsel is unpersuasive and generally not a factor to consider," *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 988 (E.D.N.Y. 1991), the inconvenience to Best would be substantially burdensome, given his medical condition. While Best provides no evidence from his insurance carrier or physician establishing that treatment cannot be performed in California, aside from stating it would be difficult to make arrangements, it would likely be very inconvenient for him to do so. However, hearings and trial may be scheduled to accommodate Best's treatment schedules. Moreover, although no estimate has been provided by

the parties as to how long they expect trial to last, it is highly unlikely trial will last four weeks. This factor weighs slightly against transfer.

(2) *Convenience of the Witnesses*. "The convenience of both the party and non-party witnesses is probably considered the single-most important factor in the analysis of whether a transfer should be granted." *Hernandez*, 761 F. Supp. at 988. Best's witnesses, primarily pawnshop owner-operators who need to be present in their businesses on a daily basis and for whom travel to California is burdensome, reside in Michigan, a surrounding state, or on the east coast. Doc. 5, David Best Aff. ¶ 7. XCEL also sells software to customers, many of whom are located in California and others are located throughout the country and Mexico. This factor is neutral because one party's witnesses would be inconvenienced no matter in which district the action is venued.

(3) *Location where Agreement was Negotiated and Executed*. The contract was negotiated and executed in California. Contract § 1.07. This factor weighs against transfer.

(4) *State most familiar with the governing law*. The substantive law governing those aspects of the suit involving contract issues is California law. Best claims that because this action does not involve complex questions of state law, a Michigan court may safely adjudicate it. Doc. 5, Def.'s Mot. Change Venue 14. That is not the criterion. The criterion is to consider the state most familiar with the governing law, and that state is California. This factor weighs against transfer.

(5) *Plaintiff's Choice of Forum*. XCEL brought this action in California, and plaintiff's choice of forum is given deference. *See* Compl. This factor weighs against transfer.

(6) *Differences in the costs of litigation in the two forums*. Best alleges that the location of nonparty witnesses and documentation makes trial less expensive in Michigan. Doc. 5, Def.'s Mot. Change Venue 13. However, Best does not say how or why it would be less expensive, other than he would not have to travel. A party's expense is more relevant if one is claiming financial hardship. Plaintiff's evidence and witnesses are largely located in California. No evidence has been presented to show a cost of litigation differential depending on the forum. This factor is neutral.

(7) *Compelling Attendance of Unwilling Nonparty Witnesses*. Fed. R. Civ. P. 45 provides that a court must quash or modify a subpoena when it requires a nonparty witness to travel more than 100 miles from that person's residence or place of business or within the state where the trial is held. Fed. R. Civ. P. 45(3)(A). Best contends there are essential nonparty witnesses available within the Eastern District of Michigan not subject to compulsory process within California because they are located more than 100 miles away from the Eastern District of California. Doc. 5, Def.'s Mot. Change Venue 13. The same is true of Plaintiff's witnesses if the Eastern District of Michigan is the forum. Accordingly, this factor is neutral.

(8) *Ease of access to sources of proof*. Best claims that the physical evidence of infringement is located in Michigan, including documentation in possession of defendant and witnesses.

Doc. 5, Def.'s Mot. Change Venue 13-14. Since the contract was negotiated and executed in California, evidence regarding contract formation is located in California. Evidence of contract performance is located in Michigan for defendant and in California for plaintiff. This factor is also neutral.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

**(9)** *In the Interest of Justice*. Best alleges the public interest is better served by adjudicating the action in Michigan because the outcome will affect the pawn industry, given that pawnbrokers rely on the proper functioning of the software and are concerned with the possibility of losing much needed technical support that defendant provides. Doc. 5, Def.'s Mot. Change Venue 14. This argument is irrelevant. The pawnbrokers are not parties to this action, the proper functioning of the software is not in dispute, and the outcome of this action should not affect services defendant or plaintiff provides the pawn industry in many states. This concerns who owns a particular piece of software, which does not concern the industry the software supports.

Balancing all of the material circumstances in light of the factors set forth above, the motion to transfer venue is DENIED.

### CONCLUSION

For all the reasons stated above, Defendant's Motion to Transfer pursuant to 28 U.S.C. § 1404 is DENIED WITHOUT PREJUDICE. Defendant shall submit an order consistent with this decision, within five (5) days following the date of service of this decision.

IT IS SO ORDERED.

Dated: **April 6, 2009**            **/s/ Oliver W. Wanger**
                                    UNITED STATES DISTRICT JUDGE